IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRIS A. DAVIS, ) <br> ) <br> Plaintiff/Counter-Defendant, ) <br> ) <br> v. ) <br> ) <br> 24 HOUR FITNESS WORLDWIDE, INC., ) <br> a Delaware corporation, ) <br> ) <br> Defendant/Counter-Claimant. ) <br> ) | Civil Action No. 12-1370-GMS |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Chris A. Davis ("Davis"), filed this diversity action on October 29, 2012, against the defendant, 24 Hour Fitness Worldwide, Inc. ("24HFW"), alleging breach of contract and unjust enrichment. (D.I. 1.) On November 21, 2012, 24HFW filed its Answer, along with counterclaims against Davis, seeking declaratory judgment and alleging breach of fiduciary duties, fraud, equitable fraud, negligent misrepresentation, and fraudulent concealment. (D.I. 7.) 24HFW voluntarily dismissed its counterclaims for fraud and equitable fraud on May 1, 2014. (D.I. 73.) Presently before the court is Davis' motion for summary judgment for the remainder of 24HFW's counterclaims. (D.I. 79.) Davis argues these claims are barred by a three-statute of limitations. For the reasons stated below, the court will grant Davis' motion for summary judgment.

### II. BACKGROUND[1]

Davis, a limited partner with the private equity firm Forstmann Little & Co. ("FL"), was elected to the board of directors ("Board") of 24HFW in 2006, after FL acquired all of 24HFW's

---

[1] The majority of the facts are taken from 24HFW's Counterclaims. (D.I. 7.) Although Davis disputes many of these characterizations, she adopts them for purposes of the summary judgment phase.

voting shares. (D.I. 7, ¶¶ 1, 14, 18.) In or around December 2008, Davis became the Chair of the Board. (*Id.* ¶ 21.) Around this time, Davis sought increased compensation via a phantom stock agreement with 24HFW and had the law firm Kirkland & Ellis LLP ("Kirkland") outline a proposal for the Board's Compensation Committee. (*Id.* ¶¶ 23–24.)

The Compensation Committee and subsequently the entire Board considered the proposed phantom stock agreement as well as some alternative proposals on May 19, 2009, but ultimately took no action. (*Id.* ¶¶ 42–44.) Instead, on May 20, 2009, the Board sent Kirkland a list of "basic terms" for a potential agreement. (*Id.* ¶ 47.) Thereafter Davis "took charge" of working to finalize the phantom stock agreement and instructed Kirkland to alter several key provisions. (*Id.* ¶¶ 50–52.) Most important, the revisions included: "(a) changing the settlement date for the award from a date in 2013 to a date in 2012; and (b) specifying that the entire award shall be settled in cash, instead of settlement of thirty percent (30%) of the award in stock." (*Id.* ¶ 51.)

Kirkland sent a finalized phantom stock agreement ("PSA") to 24HFW's CEO, Carl Liebert, for execution on June 15, 2009. (*Id.* ¶ 54.) Liebert was not aware of any agreement previously reached by the Board concerning the PSA. (*Id.* ¶ 55.) Liebert sent the PSA to Edward Beck, 24HFW's General Counsel, and Jeff Boyer, 24HFW's CFO, neither of whom knew whether the terms correctly reflected any prior agreement. (*Id.* ¶ 55–56; D.I. 81, Ex. E.) Liebert, Boyer, and Beck all recognized that the PSA specified a cash payment, to be settled in 2012, rather than 2013. (D.I. 81, Ex. B at 95–96; Ex. E.) Liebert nevertheless signed the PSA on or about June 15, 2009, with Davis signing on June 17, 2009.[2] (*Id.* ¶ 58.) Liebert, Beck, and Boyer never conferred with anyone on the Compensation Committee, the Board, or at Kirkland to determine whether the PSA accurately reflected the true agreement.

---

[2] 24HFW confirmed through discovery that CFO Jeff Boyer also received and read the PSA prior to Liebert's signing. (D.I. 81, Ex. A at 14.)

The details of the PSA were subsequently published in 24HFW's June 2009 quarterly report ("June 2009 Financials"). (D.I. 81, Ex. F at 14–15.) 24HFW's management prepared the June 2009 Financials and distributed them to the Board's Audit Committee.[3] (*Id.* Ex. D at 103–05; Ex. H at 114–15.) Director Dale Frey, a member of the Audit Committee who had previously been involved with the Board discussions concerning the PSA, received (or should have received) the 2009 June Financials within fifty days of the June 30, 2009 issue date. (*Id.* Ex. D at 102; Ex. H at 114–15.)

In 2011, Liebert for the first time reached out to members of the Board with concerns about the upcoming 2012 cash settlement date under the PSA. (D.I. 7 ¶ 66.) Directors Wayne Smith and Frey indicated that they were surprised to learn that the payment was due in 2012, rather than 2013. (D.I. 86, Ex. 37 at 82.) After conducting an investigation, the Board voted on September 13, 2012 to repudiate the PSA. (*Id.* Exs. 49, 50.) Davis filed her Complaint shortly thereafter on October 29, 2012. (D.I. 1.) 24HFW filed its counterclaims on November 21, 2012. (D.I. 7.)

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10

---

[3] The parties dispute whether the June 2009 Financials were distributed to the entire Board or just the Audit Committee. Despite there being internal inconsistencies among 24HFW's management and members of the Board concerning the policy of distribution, the court will assume at this stage that only Audit Committee members received the June 2009 Financials. (D.I. 81, Ex. D at 106; D.I. 86, Exs. 43, 44.)

3

(1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material fact exists, the district court must view the evidence in a light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing FED. R. CIV. P. 56(e)).

Importantly, the mere existence of some evidence in support of the nonmoving party will not prove sufficient for denial of a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* Specifically, the party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Thus, a nonmoving party asserting that a material fact is in dispute must support this assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute. . . ." *See* Fed. R. Civ. P. 56(c)(1). If the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden

of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 32.

## IV. DISCUSSION

Davis asserts that 24HFW's counterclaims are time-barred by a three-year statute of limitations. The parties do not dispute that, under Delaware law, a three-year statute of limitations governs the counterclaims at issue and that 24HFW first asserted its claims on November 21, 2012. Thus, the question in dispute is whether the statute of limitations clock began to run prior to the critical date: November 21, 2009.

Davis argues that the statute of limitations came into play immediately upon the execution of the PSA on June 17, 2009. Alternatively, she argues that 24HFW was on inquiry notice no later than September 2009, when Frey should have received the June 2009 Financials.

In response, 24HFW argues that the statute of limitations must be tolled from the date of execution because of (1) equitable tolling, (2) fraudulent concealment by Davis, and (3) blameless ignorance. 24HFW maintains that it was not placed on inquiry notice until after November 21, 2009.

### A. Date of Accrual

"It is axiomatic that the statute of limitations begins to run when the plaintiff's cause of action accrues." *Shockley v. Minner*, 726 F. Supp. 2d 368, 375 (D. Del. 2011). Under Delaware law, it is "crystal clear that a claim accrues as soon as the wrongful act occurs," regardless of whether the plaintiff is ignorant of the wrong. *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. 762-N, 2005 WL 1594085, at *18 (Del. Ch. June 29, 2005) (citing *Wal-Mart Stores Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004)). Each of 24HFW's counterclaims alleges misconduct occurring prior or up to the date of execution of the PSA on June 17, 2009. Thus, in

order to avoid the statute of limitations, 24HFW must establish that there is reason to toll the statute.

### B. Tolling of the Statute of Limitations

Even after the date of accrual, the statute of limitations will be tolled until a plaintiff knew or should have known of the breach. *See Marvani S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 395 (D. Del. 2012). "[T]he statute will begin to run only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Wal-Mart*, 860 A.2d at 319 (internal quotation marks omitted). The plaintiff (or counterclaimant) bears the burden of proving tolling. *Smith v. Whelan*, 566 F. App'x 177, 179 (3d Cir. 2014) (citing *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007)).

24HFW argues that it did not and could not have known of the alleged conduct, and therefore the statute must be tolled. Specifically, 24HFW asserts that its ignorance is excused under either the doctrines of equitable tolling, fraudulent concealment, or blameless ignorance.[4] (D.I. 85 at 13–14.) Davis counters that 24HFW fails to meet its burden under any of these theories. (D.I. 80 at 9–13.) Most telling, however, is Davis' argument that 24HFW was placed on inquiry notice of Davis' allegedly improper conduct prior to the execution of the PSA, and certainly no later than September 2009, when at least Frey should have been made aware of the June 2009 Financials. (*Id.* at 13–16.)

The court agrees with Davis that 24HFW had inquiry notice of the alleged wrongful conduct prior to November 21, 2009, and therefore 24HFW's counterclaims are barred by the

---

[4] The court need not address whether 24HFW satisfied its burden in proving its theories of tolling because underlying each of the doctrines is the requirement that 24HFW did not have inquiry notice. *See Smith*, 566 F. App'x at 179 ("[R]relief from the statute extends only until the plaintiff is put on inquiry notice." (citing *In re Tyson Foods*, 919 A.2d at 585)).

6

relevant three-year statute of limitations. The undisputed facts show that three members of 24HFW's management team knew of the terms of the PSA prior to its execution: Liebert (CEO), Beck (General Counsel), and Boyer (CFO). Each acknowledged the key terms of the PSA, which form the basis for 24HFW's counterclaims: the 2012 settlement date and the cash payment. Liebert ultimately signed the PSA without having ever checked with a member of the Compensation Committee or the Board to determine whether the terms were accurate.

24HFW argues that Liebert's, Beck's, and Boyle's knowledge of the PSA is irrelevant because they did not know to what the Board had previously agreed. (D.I. 85 at 18.) 24HFW goes so far as to say that attributing their knowledge to the company is "absurd"—that it "blinks the reality" of the circumstances. (D.I. 85 at 18.) Unfortunately, 24HFW's view would place blinders on its management—including its CEO—and turn them into a mere rubberstamp with no obligation to seek out information. The test for inquiry notice does not necessarily require the "discovery of facts constituting the basis of the cause of action"; rather, inquiry notice may also be established by "the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, *if pursued, would lead to the discovery' of such facts.*" *Wal-Mart*, 860 A.2d at 319 (internal quotation marks omitted) (emphasis added). Although it may be true that Liebert, Beck, and Boyer had no reason to suspect any wrongful conduct on Davis' part simply from the terms of the PSA, had they conducted a reasonable inquiry—*e.g.*, asking *any* Board member, sending an e-mail, making a phone call, etc.—they would have discovered discrepancies between what the Board allegedly approved and what Kirkland sent Liebert to sign. *See Eluv Holdings (BVI) Ltd. v. Dotomi, LLC*, No. 6894-VCP, 2013 WL 1200273, at *12 (Del. Ch. Mar. 26, 2013) (taking into account the "relative ease with which Plaintiffs could have discovered their injury" in finding that inquiry notice existed).

7

Because the knowledge of officers and management is attributable to the company, the court finds that 24HFW had inquiry notice when the PSA was executed in June 2009. *See Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, No. 98-80-SLR, 2005 WL 46553, at *4 (D. Del. 2005). As such, 24HFW's counterclaims are time-barred by the three-year statute of limitations.

Even assuming that management's knowledge of the PSA was insufficient to offer inquiry notice, the court nevertheless finds inquiry notice existed no later than September 2009, when 24HFW distributed its June 2009 Financials to the Audit Committee. 24HFW argues that summary judgment is inappropriate because there are too many controverted facts surrounding the June 2009 Financials. The court disagrees. Rather, regardless of 24HFW's characterization of the facts, Frey was placed on inquiry notice. Although Frey does not actually recall reading the June 2009 Financials, 24HFW does not dispute that he, at the very least, was one of the Board members who should have received and reviewed the quarterly report. The June 2009 Financials should have been received no later than fifty days after the report was completed. (D.I. 81, Ex. D at 102; Ex. H at 114–15.) 24HFW first argues that Frey may not have actually read the June 2009 Financials. Failure to read, however, does not excuse Frey's obligation to perform a reasonable inquiry. *See Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 794 (Del. Ch. 2014) ("[R]egardless of whether [plaintiff] personally reviewed the documents, he was on notice of the information they contained . . . ."); *Pomeranz v. Museum Partners, L.P.*, No. 20211, 2005 WL 217039, at * (Del. Ch. Jan. 24, 2005) ("At the very least, the September financials ought to have raised plaintiffs' suspicions, and this is all that is required for inquiry notice. Once a plaintiff is in possession of facts that make him suspicious, *or that ought to make him suspicious*, he is deemed to be on inquiry notice." (emphasis added) (internal quotation

marks omitted)). Second, 24HFW argues that, assuming Frey did read the financials, "there are several reasons why he would not recognize the potential significance of one or two lines out of 24 single-spaced pages of financial details." Ignoring 24HFW's inaccurate description of the PSA's inclusion in the June 2009 Financials, (D.I. 81, Ex. F, at 14–15.), the court finds 24HFW's attempt (once again) to downplay Frey's obligations and abilities inappropriate. 24HFW argues that "a full four months" had elapsed since the Board's consideration of the PSA, and Frey could not be expected to remember the details of their discussions. (D.I. 85 at 19.) This point is dubious to begin with and further undermined by the fact that Frey immediately recalled the details of the May 2009 discussion when Liebert finally came to him *at the end of 2011*. (D.I. 86, Ex. 37 at 82.) 24HFW also argues that Frey did not realize the import of the terms of the PSA because he assumed that Kirkland had prepared the PSA in accordance with the Board's wishes. (D.I. 85 at 20.) Again, this argument ignores the fact that it was Frey's obligation, as a member of the Audit Committee, to review the quarterly financial reports, rather than assume they were correct. (D.I. 81, Ex. D at 105; D.I. 86, Ex. 37 at 114–17.)

Although 24HFW asserts that "[a]ll of these controverted facts make this theory of inquiry notice incapable of summary disposition," in reality, the facts establishing inquiry notice are not in question. At two time points prior to November 21, 2009, agents of 24HFW received sufficient factual information to put them on actual notice of the alleged wrongful conduct, or at least to motivate a reasonable person to undertake an investigation that would have led to discovery of the alleged wrongful conduct. *See Wal-Mart*, 860 A.2d at 319. Although questions of reasonableness are usually ill-suited for resolution at the summary judgment stage, the court finds that no rational factfinder could conclude that 24HFW was not placed on inquiry notice prior to November 21, 2009. *See In re Adams Golf, Inc.*, 618 F. Supp. 2d. 343, 351 (D. Del.

2009); *see also Eluv Holdings*, 2013 WL 1200273, at *12 (granting summary judgment where claimants unreasonably failed to discover their injury). Thus, the three-year statute of limitations began to run prior to the critical date. (D.I. 7.) 24HFW's counterclaims are time-barred by the statute of limitations. The court grants Davis' motion for summary judgment.

## V. CONCLUSION

In view of the foregoing, Davis' motion for summary judgment is granted. (D.I. 79.) 24HFW's counterclaims are barred by statute of limitations.

Dated: September 30, 2014

UNITED STATES DISTRICT COURT

10